**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

LESTER SWARTZ,                                    Case   No.   98-6656   CIV-Moore

      Plaintiff

      -against-

LENS EXPRESS, INC. AND ITS
BOARD OF DIRECTORS; SUMMIT
TECHNOLOGY, INC. AND ITS BOARD
OF DIRECTORS; D. VERNE SHARMA;
PETER E. LITMAN; MENDERES AKDAG;
BRIAN O'NEILL; TERRI LAVERTU;
LARRY BELMONTE; AND, EDDIE LEATHAM;
JOINTLY AND SEVERALLY.

      Defendants

---

## VERIFIED AMENDED COMPLAINT AND JURY TRIAL DEMANDED

Plaintiff Lester Swartz (Swartz), pro-se, for his verified amended complaint against

the Class Representative D. Verne Sharma, hereby alleges the following:

### NATURE OF THE ACTION

1.     The nature of this action is for damages and injuries to the plaintiff as a result of the

acts and omissions and tortious conduct by the class defendants, specifically: a) civil

conspiracy; b) retaliatory discharge under Florida's Whistle-blower's Act, F.S. 112.3187;

c) violations of Chapter 812 (Theft) of the Florida Statutes; d) fraud and deceit; e) breach

of contract; f) breach of duty; g) gross negligence; h) negligent representations; I)

negligent supervision; j) negligent infliction of emotional stress; and k) intentional infliction

of severe emotional distress.

2.      The numerous reliefs sought include actual damages, punitive damages, treble damages, costs of suit, interest, fees, and any further relief that this Court may deem just, proper, and equitable.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. §1332; jurisdiction under the doctrine of pendent jurisdiction of this Court over related or ancillary state claims; and further, because plaintiff's claims for damages exceed $75,000.

4.      Venue lies in this District Court pursuant to the provisions of 28 U.S.C. § 1391.

## PERSONAL JURISDICTION AND VENUE

5.      Personal jurisdiction and venue are predicated upon the provisions of 28 U.S.C. § 1391(b)(2) and (e)(2), that being where a substantial part of the events or omissions giving rise to the claims occurred and because the ends of justice require that other parties residing in other districts be brought before the court.

## PARTY PLAINTIFF

6.      Plaintiff Lester Swartz (Swartz) was a resident of Deerfield Beach, Broward County Florida and a resident of Margate, Broward County, Florida, and is sui juris.

## CLASS ALLEGATIONS

7.      Plaintiff, in his Motion for Misjoinder dated December 4, 1998 has asked this Court to designate Defendant D. Verne Sharma as the Class Representative of all of the defendants. This class, if and when defined or designated, should include, but may not limited to: a) all diversity of citizenship defendants who presently are believed to be residents of the State of Massachusetts, namely: Summit Technology, Inc. and each and

every member of its Board of Directors; D. Verne Sharma; Peter E. Litman; b) All misjoined defendants who may be dropped, or may have been dropped, as party defendants for diversity of citizenship purposes, namely: Lens Express, Inc. and each and every member of its Board of Directors; Menderes Akdag; Brian O'Neill; Terri Lavertu; Larry Belmonte; and, Eddie Leatham; and, c) any other defendants who may need to be joined as defendants in the future.

8.      Plaintiff would further show this Court that designation of the D. Verne Sharma as a Class Representative is far superior to other available methods for the adjudication of this controversy because: a) this class is so numerous due to the fact each and every member of the Board of Directors of both Lens Express, Inc, and Summit Technology, Inc., plus the present defendants, and any other defendants that may have to be joined in the future, that joinder of all members of the class, is now, and in the future would be, impractical; b) the interests of the defendants are united and/or there are questions of law or fact common to this class, e.g., I) whether the defendants participated in and pursued the complained of common course of conduct and, ii) whether defendants acted intentionally and/or recklessly in their conduct complained of; c) the claims or defenses of the representative parties are typical of the claims or defenses of the class: and, d) the class representative of the parties, defendant D. Verne Sharma, as Chief Operating Officer of STI, is an agent, representative, officer, director, operator, and/or employee of STI, who will fairly and adequately protect the interests of the class. Furthermore, there will be no difficulty in the management of this action by designating D. Verne Sharma as the Class Representative of all of the said defendants.

9.    To date, the acts and omissions on the part of the defendants named herein, or those who may be named, as members of this class were committed while the same were acting within the scope of their employment with STI and/or its subsidiary, Lens, but defendants engaged in ultra vires conduct. As such, STI is vicariously liable for the acts and/or omissions of their agents, representatives, officers, directors, operators, and/or employees.

10.    All members of the sought after class are being sued in their individual and official capacities as agents, representatives, employees, officers, directors, and/or as members of the board of Lens, a subsidiary of STI, and/or STI.

### AS TO THE CLASS REPRESENTATIVE D. VERNE SHARMA

11.    At times material hereto, D. Verne Sharma (Sharma) was and/or is President and Chief Operating Officer of STI, and upon belief resided in the State of Massachusetts or the surrounding area, and is sui juris.

### AS TO THE SOUGHT AFTER CLASS DEFENDANTS WHO ARE ALLEGED TO BE RESIDING IN MASSACHUSETTS

12.    Defendant Summit Technology, Inc. (STI) is a Massachusetts corporation which maintains its principal executive offices located at 21 Hickory Drive, Waltham, Massachusetts 02154, and the members of the defendant Board of Directors of STI are also alleged to be residing in Massachusetts. STI develops, manufacturers, sells, and services laser systems for ophthalmologists.

4

13.    At times material hereto, defendant Peter E. Litman (Litman) was Executive Vice President and General Counsel of STI, and upon belief resides in the State of Massachusetts or the surrounding area, and is sui juris.

**AS TO THE SOUGHT AFTER CLASS DEFENDANTS WHO ARE ALLEGED
TO BE RESIDING IN FLORIDA AND WHO MAY BE DROPPED AS PARTY
DEFENDANTS IN PLAINTIFF'S MOTION FOR MISJOINDER**

14.    Defendant Lens is Florida corporation which operates as a subsidiary of STI and maintains its principal executive offices located at 350 S.W. 12th Avenue, Deerfield Beach, Florida and the defendant Board of Directors of Lens is also located there. Lens is in large part a large mail order contact lens replacement and related merchandise company.

15.    Menderes Akdag (Akdag) was and/or is President of Lens; Brian O'Neill (O'Neill) was and/or is Executive Vice President of Lens; Terri Lavertu (Lavertu) was and/or is Personnel Manager of Lens; Larry Belmonte (Belmonte) was and/or is manager of the Customer Service and Prescription Departments of Lens; and Eddie Leatham (Leatham) was and/or is supervisor of the Customer Service Department of Lens; all of these defendants resided in Florida; and all are sui juris.

16.    At times material hereto, all of the individual defendants named directly above and the Members of the Board of STI and Lens, were and/or are either agents, representatives, employees, officers, directors, operators, and/or members of the board of STI and/or Lens.

**FACTUAL BACKGROUND**

17.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though the same were more fully set forth herein and further alleges that:

5

18.    On or about July 15, 1996 plaintiff was hired to work as a customer service representative (rep) of Lens.

19.    Unbeknownst to plaintiff at the time of his hire was the fact that certain unscrupulous employees of the Lens sales department and/or other Lens employees were continuously and knowingly engaging in, and/or conspiring to engage in, schemes and artifices to defraud Lens customers by knowingly, for improper purposes and improper motives and with criminal intent: a) misrepresenting to Lens customers and/or its future customers that Lens memberships guaranteed that there would be no price increases, when in fact such representations were false, and were known to have been false when made; b) mailing Vision Plus Books and/or memberships to Lens customers without the customer's authorization, and further, that charges for the same were being placed on that customers' credit card without the customer's knowledge or authorization; and, c) mailing and/or shipping lenses and/or other merchandise to Lens customers without the customer's authorization or knowledge, and further, that charges for the said goods were being placed on the customer's credit card without the customer's authorization or knowledge. Plaintiff alleges that in furtherance of the abovesaid schemes the said relevant employees were knowingly and with criminal intent: a) using and/or conspiring to use the United States Postal Services and other interstate facilities in violation of 18 U.S.C. §§ 1341 and 1952; b) using  interstate telephone calls and wires in violation of 18 U.S.C. §§ 1343; all of which constituted a pattern of racketeering activity as defined in Title 18 U.S.C. §1961. In so doing, plaintiff further alleges Akdag, O'Neill, Sharma, Litman, and the members of the Boards of Directors of Lens and STI, and others unknown: a) received income derived,

6

directly or indirectly, from a pattern of racketeering activity ... used or invested, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of an interest in, or the establishment or operation of an enterprise(s) which engaged in, or the activities of which affected, interstate or foreign commerce; b) through a pattern of racketeering ... acquired or maintained, directly or indirectly, an interest in or control of an enterprise(s) which engaged in, or the activities of which affected, interstate or foreign commerce; c) were employed by or associated with an enterprise(s) engaged in, or the activities of which affected, interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering ...; and, d) conspired to violate the provisions of 18 U.S.C. § 1962 subsections (a), (b), or (c) in violation of 18 U.S.C. § 1962(d). Plaintiff also alleges that Lavertu, Belmonte, and Leatham, at minimum, conspired to violated the provisions of 18 U.S.C. § 1962 subsections (c) in violation of 18 U.S.C. § 1962(d). Additionally, plaintiff alleges defendants also may have violated and/or conspired to violate several Chapters of the Florida Statutes, including, but not be limited to, violations of Chapters: 812 (Theft); 817 (Fraudulent Practices); and 895 (Racketeering).

20.     Plaintiff now continues to state that when Lens customers called Lens to complain about the unauthorized shipments and charges, those incessant and seemingly never-ending calls were automatically referred to the customer service department and/or its reps. Plaintiff, as well as other customer service reps were required to resolve such matters described in paragraph 19 above.

21.    Plaintiff constantly complained to Belmonte, Leatham, and to others regarding the abovesaid unlawful activity, but to no avail.

22.    On December 9, 1996 plaintiff could no longer deal with the stress of  the unrelenting bombardment of calls from Lens' outraged customers, nor could plaintiff handle the alleged fraudulent sales and business practices and/or the abovedescribed racketeering activity by the said Lens employees and/or by the Lens management and plaintiff finally "exploded". Later that same day plaintiff was sent home and put on a medical leave of absence by Belmonte, who also promised plaintiff that when he was able to return to Lens, plaintiff could work in the prescription department there which Belmonte was also the manager.

23.    Plaintiff sought medical treatment from his Lens' Humana doctors. But, on January 28, 1997 Lens informed plaintiff that Lens would be changing insurance carriers to Sunrise Healthcare (Sunrise) commencing on February 1, 1997. On January 29, 1997 plaintiff signed up for the Sunrise plan at the Lens office.

24.    On February 3 1997, prior to plaintiff's appointment with his new Sunrise primary care physician, Dr. Aaron, plaintiff met  with Lavertu at the Lens office who then informed plaintiff that she could not extend plaintiff's medical leave beyond February 12, 1997, despite plaintiff's repeated arguments that Belmonte assured plaintiff that his said leave of absence would be extended and/or renewed until plaintiff was able to return to work.

25.    Later on that February 3, 1998 date, plaintiff met with Dr. Aaron, who subsequently told plaintiff that he would not authorize plaintiff to return to work until plaintiff's test results were all in and/or until all testing was complete and/or until all of plaintiff's medical records

were before him. That same day, around 1:00 PM, plaintiff left word on Lavertu's voice mail regarding Dr. Aaron's aforementioned comments.

26.    On February 10, 1997 plaintiff faxed Lavertu requesting that the powers that be reconsider extending plaintiff's medical leave of absence for just cause and further because their decision to deny plaintiff's medical leave of absence was repugnant to the positive standard of right and duty which an employer owes to its employees, but those said powers refused.

27.    On February 12, 1997, Lavertu, acting in concert with O'Neill, informed plaintiff that if he could not return to work on February 13, 1997 with authorization to do so from plaintiff's doctor, plaintiff would be: a) considered by Lens to have voluntarily resigned; and, b) terminated pursuant to the subject medical leave of absence agreement. Plaintiff was terminated from Lens on February 13, 1998.

## COUNT I

## CIVIL CONSPIRACY

28.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though the same were more fully set forth herein and further alleges that:

29.    Plaintiff was employed by Lens and STI, and/or its corporate predecessors, until December 12, 1996 as a customer service rep.

30.    Upon belief, sometime in January , 1997, Lavertu and O'Neill, and others unknown, launched a campaign to create an atmosphere in which to discharge the plaintiff as a result of plaintiff's "whistle-blowing" letter to Sharma which was dated January 2, 1997 and is discussed below.

31.     In or around January and/or February of 1997, Lavertu and O'Neill, and others unknown, entered into a combination, agreement, and conspiracy whereby the same would, as part of the agreement, constructively terminate plaintiff's employment with Lens and/or STI.

32.     Lavertu and O'Neill and others unknown, at various times unknown, met, joined together, and/or planned and conspired to discharge the plaintiff and to engage in other wrongful and tortious conduct subject of this action.

33.     Lavertu and O'Neill, and others unknown, all agreed and understood that the purpose of their meetings and agreements were unlawful, and would result in injury to the plaintiff.

34.     Lavertu and O'Neill, and others unknown, had knowledge of the aforedescribed wrongs conspired to be done and were about to be committed, and having the power and the duty to prevent or aid in preventing the commission of the same, did wilfully and wantonly, neglect and refuse so to do.

35.     Lavertu and O'Neill, and others unknown, knowingly, maliciously, wrongfully, intentionally, and without justification, conspired to and did injure the plaintiff and tortiously interfered with plaintiff's employment with Lens and/or STI.

36.     On or about February 13, 1997, as a result of the defendants agreement and conspiracy, plaintiff was discharged from Lens and STI, by and through Lavertu..

37.     That by the acts done in furtherance of this conspiracy as fully set forth in the paragraphs contained herein, plaintiff was injured in his  person and property.

### COUNT II

## RETALIATORY DISCHARGE UNDER THE FLORIDA WHISTLE-BLOWERS ACT

38.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though the same were more fully set forth herein and further alleges that:

39.     On January 2, 1997 plaintiff faxed and mailed a "whistle-blowing" letter to Sharma wherein plaintiff complained of the alleged negligence on the part of the personnel department and of the unlawful conduct and racketeering activity on the part of certain members of the Lens sales department and other employees of Lens.

40.     Plaintiff was subsequently terminated from Lens and/or STI on February 13, 1997 supposedly because plaintiff could not return to work from his medical leave on February 12, 1997 with authorization from plaintiff's doctor. Lavertu and O'Neill, and others unknown, reasonably knew or should have known that plaintiff could not get authorization from plaintiff's doctor for him to return to work by the February 13, 1997 deadline.

41.     Plaintiff's employment with Lens and/or STI was subsequently terminated at the direction of Lavertu and O'Neill, and allegedly by other defendants unknown at this time.

42.     Plaintiff's employment with Lens and/or STI was terminated in retaliation because the plaintiff had "blown the whistle" on numerous members of the Lens sales department who were engaged in unlawful activities which plaintiff perceived as a substantial and specific danger to the public's health, safety, and/or welfare.

43.     That Lavertu and O'Neill's actions, and those of others unknown at this time, were malicious and calculated with the express intent to harm and penalize the plaintiff for actions of the plaintiff which plaintiff believed were compelled pursuant to law.

44.     As a direct and proximate result, plaintiff suffered damage and injury.

11

## COUNT III

## THEFT

45.     Plaintiff repeats and realleges each and every allegation contained in the foregoing

paragraphs as though the same were more fully set forth herein and further alleges that:

46.     During the relevant times and at all times material to this action, Sharma, Litman,

Akdag, O'Neill, Lavertu, Belmonte, and Leatham knowingly, obtained the property of the

plaintiffs with the criminal intent to, either temporarily or permanently, deprive the plaintiff

of his intangible personal property right to their honest services in violation of § 812.014(1)

Florida Statutes, such property as described in the notices of theft mailed to each of the

subject defendants on or about April 12, 1997.

47.     As a result plaintiffs have been injured because of the violation of § 812.014(1)

Florida Statutes.

48.     Before filing this action plaintiff made written demands for three times the amount

of the property taken but defendants have not monetarily responded to plaintiffs demands.

49.     All conditions precedent thereto have been performed by the plaintiff or have

occurred.

## COUNT IV

## FRAUD AND DECEIT

50.     During the training period plaintiff was expressly assured that: a)  Lens: "... has an

excellent reputation for conducting its business activities in accordance with high ethical

standards, integrity, and fairness." Defendants knew or should have known that this

statement, representation, and/or promise was known to be materially false and misleading

12

when made because defendants knew or should have known Lens did not have an excellent reputation for conducting, nor as a matter of fact did it conduct, its business in accordance with high ethical standards, integrity, and fairness; b) Lens: "... has "an open door policy" regarding employee concerns. Defendants knew or should have known that this statement, representation, and/or promise was materially false and misleading when made because defendants knew or should have known Lens did not as a matter of fact always exhibit good-faith in their said "open door policy" regarding employee concerns; and c) Lens: "... was "always looking for suggestions to ... improve methods, procedures, and working conditions." Defendants knew or should have known that this statement, representation, and/or promise was materially false and misleading when made because defendants knew that Lens was not as a matter of fact looking for suggestions in this arena to improve methods, procedures, and working conditions in all good faith.

51.    Defendants made or caused to be made the abovesaid false and fraudulent statements, representations, and/or promises to induce the plaintiff to act in reliance upon them by lulling plaintiff into a false sense of security in making his decision to become affiliated with Lens and/or STI, to the end that plaintiff would come to work in the Lens customer service department which at that time was in fact experiencing many employee turnovers.

52.    Defendants knowingly made and/or conspired to make, and/or caused and/or conspired to cause to be made, the above false and fraudulent statements, representations, and/or promises calculated to deceive the plaintiff and other persons of ordinary prudence and exercising due care, by making such material nondisclosures and

concealment of facts and information important to good faith hiring practices and retention of the plaintiff, and as to the purported lawful operation and activities of STI and Lens.

53.    Plaintiff was ignorant of the falsity of the representations and justifiably relied on the correctness of all of the abovesaid false and fraudulent statements, representations, and/or promises, and did take employment with Lens in its customer service department, all to plaintiff's detriment.

54.    As a direct and proximate cause of the abovesaid fraudulent statements, representations, and/or promises, plaintiff suffered damage and injury.

**COUNT V**

**<u>BREACH OF CONTRACT</u>**

55.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though the same were more fully set forth herein and further alleges that:

56.    Plaintiff, Belmonte, and Leatham entered into an oral contract wherein, after training, plaintiff was promised a 125% commission factor pay arrangement by Belmonte and Leatham.

57.    Plaintiff performed his part of the conditions precedent to the oral contract by working diligently and by showing up to work on a regular basis.

58.    Subsequently Belmonte and Leatham told plaintiff that they were unable to fulfill that arrangement due to company policy which restrained such a factor to a maximum of 100% until after the 90 day period for new employees had expired, but that they still could obtain the 125% commission factor if plaintiff demanded them to do so.

14

59.    Plaintiff did not immediately demand the 125% commission factor because Belmonte and Leatham then promised plaintiff at least the same 125% commission, and perhaps even more, immediately upon the expiration of the 90 day period. Belmonte, Leatham, and others unknown, also failed to perform this part of the contract.

60.    As a result of the breach of the oral contract by Belmonte and Leatham, plaintiff suffered financial damage and injury.

## COUNT VI

## BREACH OF DUTY

61.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though the same were more fully set forth herein and further alleges that:

62.    At all times during the course of plaintiff's employment with Lens and/or STI, the latters owed plaintiff a duty to act honestly and faithfully in the best interests of the plaintiff and to refrain from any unlawful or unethical conduct which was or could be detrimental to him.

63.    Defendants breached their duty to the plaintiff; that the breaches of duty were a result of defendants' want of care or attention to duty; defendants' acts and omissions were foreseeable by ordinary prudent employers and their respective management personnel as an appreciable harm to plaintiff, and further, were a result of defendants' reckless indifference to the rights of the plaintiff.

64.    As a direct and proximate cause of the defendants' breaches of duty, plaintiff sustained financial and emotional damages and injury.

15

## COUNT VII

## NEGLIGENT REPRESENTATIONS

65.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though the same were more fully set forth herein and further alleges that:

66.    On December 18, 1996 Belmonte informed plaintiff that the latter's medical leave of absence had been granted until January 12, 1997 and assured plaintiff that the same would be renewed every thirty (30) days. Plaintiff did not sign, nor was he asked to sign a medical leave of absence form that date.

67.    On January 7 1997 Lavertu informed plaintiff that he must now sign the medical leave of absence form after the fact which plaintiff did based solely on the representations to plaintiff by Belmonte that such leave would be extended and/or renewed every thirty (30) days until plaintiff was able to return to work.

68.    On January 12, 1997 Belmonte extended or renewed plaintiff's said leave for another thirty (30) days and assured plaintiff once again that Belmonte would and could extend and/or renew plaintiff's medical leave each month until plaintiff was able to return to work.

69.    On January 29, 1997 while plaintiff was signing up for the Sunrise plan at the Lens office, Belmonte once again assured plaintiff that plaintiff's medical leave would be extended and/or renewed for another 30 days.

70.    Surprisingly, on January 30, 1997 Belmonte left plaintiff a message on plaintiff's answering machine that Lavertu would not extend or renew plaintiff's medical leave and

that Lavertu had just informed Belmonte that he was wrong about such extensions and/or renewals.

71.    Belmonte's representations to plaintiff that the latter's medical leave would and could be extended and/or renewed every thirty (30) days until plaintiff was able to return to work was false, and should have been known by Belmonte to have been false when made. Belmonte made the subject representation to plaintiff without such knowledge.

72.    Plaintiff justifiably relied on the correctness of Belmonte's subject representations, all to plaintiff's detriment.

73.    As a direct and proximate result, plaintiff sustained financial and emotional damages and injury.

## COUNT VIII

## GROSS NEGLIGENCE

74.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though the same were more fully set forth herein and further alleges that:

75.    Defendants had a legal duty to protect the plaintiff from any harm or injury under the circumstances alleged throughout this complaint.

76.    Defendants were grossly negligent in complying with their respective duties.

77.    As a direct and proximate result of the gross negligence by the defendants, plaintiff sustained financial and emotional damages and injury.

## COUNT IX

## NEGLIGENT SUPERVISION

17

78.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though the same were more fully set forth herein and further alleges that:

79.    Defendants STI and its Board of Directors, and Sharma were negligent in its supervision of Lens and its management and employees.

80.    Defendants Lens and its Board of Directors, Akdag and O'Neill were negligent in its supervision of its relevant other management and employees.

81.    On or about January 2, 1997, plaintiff notified Sharma by means of a "whistle-blowing" letter of the negligence of the Lens personnel department and also of the intolerable unlawful and unethical conduct by numerous members of the Lens sales department.

82.    Plaintiff notified Belmonte, and Leatham of the intolerable unlawful and unethical conduct by numerous members of the Lens sales department.

83.    Sharma, Belmonte, and Leatham were notified of the imminent danger of the unethical and unlawful activities by numerous members of the Lens sales department and did little, if anything to control or curb such activities.

84.    As a result of Sharma's negligent supervision, and that of the other members of Lens and STI management unknown at this time, and the negligent supervision by the respective Boards of Directors of Lens and STI in their supervision of the said members of the Lens sales department and others, the latters were able to commit the acts and omissions complained of and incorporated by reference herein with little fear of repercussions from Sharma, the management of Lens and/or STI, and/or the latters' respective Boards of Directors.

85.     As a direct and proximate result of the gross negligence by the defendants, plaintiff sustained financial and emotional damages and injury.

86.     As a direct and proximate result of the negligent supervision of the defendants, as fully set forth in the paragraphs adopted and incorporated by reference herein, plaintiff needed to obtain medical, psychological, and/or psychiatric treatment  which may continue for an indeterminable length of time.

87.     That the damages to  plaintiff are permanent and will detrimentally affect his earning capacity, and may cause him to incur medical expenses and treatment in the future.

## COUNT X

## NEGLIGENT INFLICTION OF EMOTIONAL STRESS

88.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though the same were more fully set forth herein and further alleges that:

89.      By reason of the aforesaid circumstances and events contained herein and as fully set forth in the paragraphs adopted and incorporated by reference herein, the defendants: a) had knowledge, or by the  exercise of reasonable diligence which an ordinary and prudent person would have or should have knowledge, of the unlawful and unethical conduct by the relevant Lens sales department employees and/or by the Lens or STI management ; b) knew or should have known that the acts and/or omissions by the defendants were foreseeable and likely to and did result in injury to the plaintiff; c) owed plaintiff an implied duty to exercise due care as reasonable and prudent persons would do and to take active measures to protect plaintiff from any such perils due to any further

19

misconduct by the employees of Lens and STI and to prevent plaintiff from incurring any further damage or injury therefrom.

90.     Defendants breached that duty and standard of care owed to the plaintiff.

91.     As a direct and proximate result of the gross negligence by the defendants, plaintiff sustained financial and emotional damages and injury.

92.     As a direct and proximate result of the acts and omissions by the defendants, as fully set forth in the paragraphs adopted and incorporated by reference herein, the plaintiff incurred severe and grievous mental and emotional suffering, fright, anguish, shock, nervousness, and/or anxiety. Plaintiff continues to be fearful, anxious, and nervous.

93.     As a direct and proximate result of the acts and omissions by the defendants, as fully set forth in the paragraphs adopted and incorporated by reference herein, plaintiff needed to obtain medical, psychological, and/or psychiatric treatment which may continue for an indeterminable length of time.

94.     That the damages to plaintiff are permanent and will detrimentally affect his earning capacity, and may cause him to incur medical expenses and treatment in the future.

### COUNT XI

### INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS

95.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though the same were more fully set forth herein and further alleges that:

96.     By reason of the aforesaid circumstances and events contained herein and as fully set forth in the paragraphs adopted and incorporated by reference herein, the acts and omissions of the defendants in terminating the plaintiff were done willfully, maliciously,

wantonly, and purposely with the intention to inflict severe emotional distress upon the plaintiff or were done in reckless disregard of the probability of causing plaintiff severe emotional distress, and these acts and omissions did in fact result in severe and extreme emotional distress.

97.     As a direct and proximate result of the gross negligence by the defendants, plaintiff sustained financial and emotional damages and injury.

98.     As a direct and proximate result of the acts and omissions by the defendants as fully set forth in the paragraphs adopted and incorporated by reference herein, plaintiff was caused to incur severe and grievous mental and emotional suffering, fright, anguish, shock, nervousness, and/or anxiety. Plaintiff continues to be fearful, anxious, and nervous.

99.     As a direct and proximate result of the acts and omissions by the defendants as fully set forth in the paragraphs adopted and incorporated by reference herein, plaintiff  needed to obtain medical, psychological, and/or psychiatric treatment  which may continue for an indeterminable length of time.

100.   That the damages to the plaintiff were permanent and did detrimentally affect his earning capacity, and did cause him to incur medical expenses and treatment, and may cause him to do the same in the future.

101.   That the aforesaid acts and omissions by the defendants were done with such an intentional, wilful, wanton, malicious, outrageous, and calculated intent to cause such severe emotional distress, mental pain and anguish to the plaintiff, that when the facts are fully related it will shock the conscience of the average citizen and should be regarded as conduct so outrageous as to go beyond all possible bounds of decency for employers and

their management to perpetrate upon an employee, and will be and/or should be regarded as utterly intolerable.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays that judgment be entered against defendant D. Verne Sharma, as the Class Representative of the defendants as follows:

I.      As to Counts I, III, IV, V, VI, VII, VIII, IX, X, and, XI:

        a.      an award of compensatory damages in a minimum amount of One Hundred Thousand Dollars and no cents ($100,000.00).

        b.      An award of punitive damages in an amount yet ascertained to compel others similarly situated to deter acquiescence or approval of similar tortious conduct;

        c.      Special damages for medical care and treatment and/or incidental damages in conformity to proof;

II.      As to Count II an award of damages for the amount demanded in each individual notice of theft and mailed via U.S. Certified Mail, Return Receipt Requested, as aforedescribed, each separate sum in each demand duly trebled in accordance with § 772.11 Florida Statutes;

III.      For all costs associated with all related suits plus post-judgment interest at the statutory rate until fully paid, for all costs of this action;

IV.      For any and further relief as the Court finds just, proper, and equitable; and,

V.      A trial by jury on all issues so triable

_____

Lester Swartz, Pro Se

22

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed via

U.S. Mail to: Peter W. Homer, attorney for the defendants, Homer & Bonner, P.A., 3400

Nationsbank Tower, 100 Southeast 2nd Street, Miami Florida 33131 on this 4th day of

December, 1998.

_____

Lester Swartz, Pro Se
P.O. Box 4612
Deerfield Beach, FL 33442
Phone: (561) 392-1761 or (954) 234-8132

## AFFIDAVIT OF LESTER SWARTZ

STATE OF FLORIDA    )
                             ) :ss
COUNTY OF BROWARD  )

Now Comes Lester Swartz, and being first duly sworn, based upon personal knowledge deposes and says as follows:

That under the penalties of perjury, the facts contained in the Verified Amended Complaint are true and correct to the best of affiant's knowledge

AFFIANT FURTHER SAYETH NAUGHT.

_____
Lester Swartz

I HEREBY CERTIFY, that on this day, before me an officer duly authorized in the State and in the County aforesaid to take acknowledgments, personally appeared **LESTER SWARTZ,** to me known to be the person described and/or furnished the following identification, _S632-535-36-091_, and who executed the foregoing instrument and acknowledged before me that he executed the same.

WITNESS my hand and official seal in the County and State this _4th_ day of _Dec_, 1998.

_____
NOTARY PUBLIC

My Commission Expires:



BRENDA J. HARTLEY
MY COMMISSION # CC 434386
EXPIRES: March 16, 1999
Bonded Thru Notary Public Underwriters

24